UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JANICE GALLAGHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Docket No. 07-cv-162-GZS |
| ) | |
| CIGNA HEALTHCARE OF MAINE, INC., ) | |
| GENERAL DYNAMICS CORP., ) | |
| UDAY DESHMUKH, M.D. MPH, and ) | |
| KINDRED NURSING CENTERS ) | |
| WEST, L.L.C. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**ORDER ON MOTION TO DISMISS**

Before the Court is a Motion to Dismiss filed by Defendant CIGNA HealthCare of Maine, Inc. ("CIGNA") (Docket # 9), and Defendant Uday Deshmukh M.D. has joined the Motion (Docket # 21). CIGNA and Dr. Deshmukh move to dismiss Counts I through VI and Count X of Plaintiff's First Amended Complaint. For the reasons stated below, the Court GRANTS the Motion.

**I.  LEGAL STANDARD**

Pursuant to Rule 12(b)(6), a party is entitled to have a claim against it dismissed when the allegations on which the claim depends "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion under Rule 12(b)(6), the Court must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences in the plaintiff's favor, and determine whether the complaint, when taken in the light most favorable to the plaintiff, sets forth sufficient facts to support the claim for relief. Clorox Co. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 30 (1st Cir. 2000); LaChapelle v. Berkshire

Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998). Pursuant to Rule 8(a), the pleader need only make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Despite the liberal pleading standard of Rule 8, to survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1967 (2007).

## II.   BACKGROUND

Plaintiff Janice Gallagher is the personal representative of her deceased husband, Bradley Gallagher. Mr. Gallagher was an employee of Bath Iron Works ("BIW"), a General Dynamics Corporation ("General Dynamics"), from 1968 until he was unable to work due to his deteriorating health. CIGNA administered and was the claims fiduciary of BIW's group health care plan ("the health care plan" or "the plan") and General Dynamics was the Plan Administrator and Plan Sponsor of the health care plan. The health care plan is an employee benefit plan within the meaning of Section 3(b) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(3). Mr. Gallagher was a participant in the plan.

This case arises out of Defendant CIGNA's denial of health insurance benefits to Mr. Gallagher in the form of skilled nursing care. In short, Mr. Gallagher suffered from a host of serious medical conditions, including Type II diabetes. On September 6, 2006, Mr. Gallagher underwent amputation of his right leg below the knee. Following the amputation, Mr. Gallagher commenced rehabilitation until September 22, 2006, when he developed septicemia and a urinary tract infection. He was admitted to acute care at Central Maine Medical Center ("CMMC"). Upon discharge from CMMC on October 4, 2006, Mr. Gallagher was admitted to the Winship Green Nursing Home[1] ("Winship Green") for skilled, 24-hour nursing care.

---

[1] Defendant Kindred Nursing Centers West, LLC. is a Delaware Limited Liability Company doing business in Maine as the Winship Green Nursing Home.

2

On October 31, 2006, CIGNA notified Winship Green that further in-patient skilled nursing care was denied. Numerous individuals, including his doctor, nurse and social worker, appealed CIGNA's decision on behalf of Mr. Gallagher. At the time CIGNA denied further in-patient skilled nursing care, Mr. Gallagher's amputation site was open, with his femur bone protruding. CIGNA, via Dr. Deshmukh,[2] the head Medical Director for CIGNA, upheld its decision. On November 6, 2006, Mr. Gallagher was discharged from Winship Green to the care of his wife, who had no medical training. On November 19, 2006, Mr. Gallagher was seen at CMMC for emergency treatment. Mr. Gallagher was admitted to CMMC on the same day and diagnosed with sepsis. He died later that day.

On August 16, 2007, Plaintiff filed her Complaint in the Sagadahoc Superior Court in the State of Maine. On September 13, 2007, Defendant CIGNA removed the case to Federal Court (Docket # 1). After removal, Plaintiff filed an Amended Complaint asserting ten claims and naming as Defendants CIGNA, General Dynamics, Winship Green and Dr. Deshmukh. (Docket # 5).[3] Specifically, the Complaint asserts causes of action for carrier liability under the Health Improvement Act, 24-A M.R.S.A. § 4313 against CIGNA (Count I), violation of Maine's Unfair Claims Settlement Practices Act, 24-A M.R.S.A. § 2436-A against CIGNA and General Dynamics (Count II), breach of contract against CIGNA and General Dynamics (Count III), intentional infliction of emotional distress against CIGNA, General Dynamics and Winship Green (Count IV), negligent infliction of emotional distress against CIGNA, General Dynamics and Winship Green (Count V), health plan negligence against CIGNA and General Dynamics (Count VI), violation of Maine law regarding care at a long-term care facility against Winship

---

[2]     Dr. Deshmukh is a Lead Medical Director for CIGNA. In this capacity, Dr. Deshmukh was responsible for the medical decisions made by physicians within his department, including the decision to deny the benefits at issue in this case.

[3]     The counts within the Complaint are numbered one through eleven, but there is no Count IX.

Green (Count VII), wrongful denial of health benefits under ERISA against CIGNA and General Dynamics (Count VIII), breach of fiduciary duty under ERISA against CIGNA, General Dynamics and Dr. Deshmukh (Count X) and failure to comply with terms of the plan document against CIGNA and General Dynamics (Count XI).

On October 15, 2007, CIGNA filed a Motion to Dismiss (Docket # 9). Through the Motion to Dismiss, CIGNA asserts that Counts I through VI are preempted by ERISA, 29 U.S.C. § 1132(a) et seq., and that Count X for breach of fiduciary duty cannot survive because Plaintiff has available a remedy under § 1132(a)(1)(B). On November 29, 2007, Dr. Deshmukh joined CIGNA's Motion to Dismiss (Docket # 21).[4]

## III.   DISCUSSION

ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries by regulating the creation and administration of employee benefit plans. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44 (1987). In furtherance of ensuring that employee benefit plan regulation is "exclusively a federal concern," Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981), ERISA includes expansive preemption provisions.

**A.   ERISA Preemption**

There are two components to ERISA's extensive preemptive force. First, ERISA section 514(a) expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Second, section 502(a) of ERISA contains a comprehensive scheme of civil remedies to enforce ERISA's provisions. See 29 U.S.C. § 1132(a). Thus, the Court must determine whether Counts I through VI fall under either of these preemptive provisions.

---

[4] Defendants General Dynamics and Winship Green have not moved to dismiss, and the Court makes no representations as to the claims pressed against these defendants.

### 1. Preemption under section 514(a)

Under section 514(a), Congress specifically preempted "all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Statutory provisions, court decisions, common law causes of action and state law from all other sources are encompassed by ERISA's sweeping preemption clause. 29 U.S.C. § 1144(c)(1) ("State law" is expansively defined under ERISA to include "all laws, decisions, rules, regulations, or other State action having the effect of any law, of any State"); see also Pilot Life Ins. Co., 481 U.S. at 47 (ERISA preempts state law claims for tortious breach of contract, breach of fiduciary duties, and fraud in the inducement arising from improper processing of a claim under a plan). The crucial question in determining whether a state law claim is preempted is whether the state action "relates to" an ERISA plan. See 29 U.S.C. § 1144(a).

Although Congress did not define in the statute what it meant by state laws that "relate to" an ERISA benefit plan, the Supreme Court has stated that the words "relate to" are to be given their "broad common-sense meaning" of having "a connection with or reference to . . . a plan." Pilot Life Ins. Co., 481 U.S. at 47. A claim "relates to" an ERISA plan if "it has a connection with or reference to such a plan," Carlo v. Reed Rolled Thread Die Co., 49 F.3d 790, 793 (1st Cir. 1995) (quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990)), or "if the trier of fact necessarily would be required to consult the ERISA plan to resolve the plaintiff's claims." Harris v. Harvard Pilgrim Health Care, Inc., 208 F.3d 274, 281 (1st Cir. 2000) (concluding that "state-law claims for unfair and deceptive trade practices are preempted by ERISA" because the court necessarily would have to refer to the plan to determine whether the defendant breached its duties).

### 2. Preemption under section 502

In addition to section 514 preemption, ERISA provides for complete preemption under section 502(a). Section 502(a)(1)(B) provides: "A civil action may be brought (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Section 502(a), by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded. A state cause of action that would fall within the scope of this remedial scheme is preempted as conflicting with the intended exclusivity of ERISA's remedial scheme, even if those causes of action would not necessarily be preempted by section 514(a). See Aetna Health Inc. v. Davila, 542 U.S. 200, 214 n.4 (2004).

In accord with the Congressional purpose of creating a uniform regulation, ERISA's civil enforcement provision is a comprehensive remedial scheme. Indeed, the Supreme Court has stated that section 502(a),

> represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.

Davila, 542 U.S. at 208-09 (quoting Pilot Life Ins. Co., 481 U.S. at 54). "[I]f an individual brings suit complaining of a denial of [benefits], where the individual is entitled to such [benefits] only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls

'within the scope of' ERISA § 502(a)(1)(B)." Id. at 210 (citation omitted). Consequently, a claim that "duplicates, supplements, or supplants" the remedies provided by ERISA runs afoul of Congressional intent and is preempted. Id. at 209 (citing Pilot Life Ins. Co., 481 U.S. at 54-56; Ingersoll-Rand Co., 498 U.S. at 143-45).

**B.     Plaintiff's Claims**

The pending Motion to Dismiss, requires the Court to determine whether Counts I through VI are subject to one or both of the ERISA preemption provisions just described.

### 1. Carrier Liability under the Health Plan Improvement Act (Count I)

Count I asserts a cause of action under the Health Plan Improvement Act, 24-A M.R.S.A. section 4313. Section 4313 provides that:

> A carrier has the duty to exercise ordinary care when making health care treatment decisions that affect the quality of the diagnosis, care or treatment provided to an enrollee and is liable for damages as provided in this section for harm to an enrollee proximately caused by the failure of the carrier or its agents to exercise such ordinary care.

24-A M.R.S.A. § 4313. Defendant CIGNA argues that this Maine statute codifies common law negligence and that Plaintiff's claim based on the statute is preempted by ERISA. In determining whether a claim is preempted by ERISA, the Court must examine Plaintiff's complaint, the statute on which it is based and, potentially, the plan documents. See Davila, 542 U.S. at 211.

In the First Amended Complaint, Plaintiff asserts that CIGNA failed to exercise ordinary care in making the healthcare treatment decisions regarding Mr. Gallagher and breached the duty to exercise ordinary care when those decisions resulted in Mr. Gallagher's ultimate death. (See First Am. Compl.(Docket # 5) at 7.) Specifically, Plaintiff alleges that despite her husband's need for skilled nursing care and the support of her husband's health care team, CIGNA refused

7

to cover the requested skilled nursing care. After careful consideration of Plaintiff's claim in Count I, it is clear that the action complained of is CIGNA's denial of benefits under the terms of the ERISA regulated plan.

Notably, section 4313 does not impose any duties outside of ERISA or the terms of the health care plan. Section 4313(6) explicitly states: "This section does not create any obligation on the part of a carrier to provide an enrollee any health care treatment or service that is not covered by the enrollee's health plan policy or contract." 24-A M.R.S.A. § 4313(6). As a result, a carrier can be liable under section 4313 only if it denied coverage for skilled care that was covered by the health care plan. See, e.g., Davila, 542 U.S. at 213 ("[I]f a managed care entity correctly concluded that, under the terms of the relevant plan, a particular treatment was not covered, the managed care entity's denial of coverage would not be a proximate cause of any injuries arising from the denial. Rather, the failure of the plan itself to cover the requested treatment would be the proximate cause.") Thus, in order to evaluate Plaintiff's claim, the Court would be required to evaluate the health care plan, what it covers and whether the denial of coverage by CIGNA was in accord with the plan.

In short, interpretation of the terms of the health care plan would be an essential part of the section 4313 claim and liability would exist under section 4313 only because of CIGNA's administration of the ERISA regulated health care plan. See id. Because the Court would have to consult the ERISA plan to resolve the state law claim, the state law "relates to" an ERISA plan and is preempted by section 514(a). See, e.g., Harris, 208 F.3d at 281.

In addition, Plaintiff brings this claim "only to rectify a wrongful denial of benefits promised under [an] ERISA-regulated plan[], and do[es] not attempt to remedy any violation of a legal duty independent of ERISA." Davila, 542 U.S. at 214. The statute at issue here is

analogous to that found completely preempted by section 502(a) in Davila and similarly threatens to undermine the Congressional intent to make the ERISA civil enforcement mechanisms the exclusive remedy for ERISA-regulated plans. See id. at 216. As the Supreme Court found the statute in Davila completely preempted by section 502(a), Plaintiff's Count I is completely preempted by section 502(a).

In response to the Motions to Dismiss, Plaintiff states that ERISA does not preempt state laws that regulate insurance. It is true that § 1144(b)(2)(A) acts as a "savings clause" for laws that regulate insurance, and states: "[N]othing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking or securities." 29 U.S.C. § 1144(b)(2)(A). Plaintiff, however, fails to demonstrate or even attempt to argue how the state law that forms the basis for Count I "regulates insurance" within the meaning of the statute.[5] See Hotz v. Blue Cross and Blue Shield of Mass., Inc., 292 F.3d 57, 60 (1st Cir. 2002) (providing that "[t]he underlying notion is that a claim or rule directed only to insurance is one that 'regulates insurance' while one that regulates insurance along with everything else is not within the quoted phrase.") Instead, Plaintiff cites inapposite cases and argues generally about the changing landscape of ERISA preemption. In short, even if the state law at issue was found to regulate insurance, "[u]nder ordinary principles of conflict pre-emption, then, even a state law that can arguably be characterized as 'regulating insurance' will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme." Davila, 542 U.S. at 217-18. Plaintiff's claim in Count I is preempted by ERISA.

---

[5] Plaintiff makes this general argument with respect to Counts I and II. Count II is addressed in the next section, and the Court's analysis applies with equal force to Counts I and II.

### 2.      Violation of Maine's Unfair Claims Settlement Practices Act (Count II)

In Count II, Plaintiff claims a cause of action under Maine's Unfair Claims Settlement Practices Act, 24-A M.R.S.A. § 2436-A ("UCSPA").  UCSPA provides a civil cause of action for a person injured by that person's insurer when "[w]ithout just cause, [the insurer] fail[s] to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear."  24 M.R.S.A. § 2436-A(1)(e).  The statute goes on to define "without just cause."  "[A]n insurer acts without just cause if it refuses to settle claims without a reasonable basis to contest liability . . . ."  24 M.R.S.A. § 2436-A(2).  As with the claim under the Health Plan Improvement Act (Count I), the UCSPA "relates to" an ERISA benefit plan and is preempted.  See Harris, 208 F.3d at 281.

Plaintiff's claim under Maine's UCSPA would necessarily require the Court to examine the plan.  Indeed, to resolve Count II, the Court would need to consider whether liability had become clear and whether CIGNA had a reasonable basis to contest liability; an inquiry that would inevitably require delving into the details of the plan.  Plaintiff's Complaint highlights this concern: "CIGNA intentionally denied benefits to Bradley Gallagher . . . . and . . . CIGNA violated UCSPA when they failed to settle Mr. Gallagher's claims within a reasonable time without a reasonable basis to contest liability."  (First Am. Compl. at 8.)  Furthermore, this Court previously has held that a cause of action under section 2436-A is preempted by ERISA.  See Nicholson v. Prudential Ins. Co., 235 F. Supp. 2d 22, 25 (D. Me. 2003) (stating that "[i]t is clear that both of Plaintiff's state-law claims asserted in his Complaint are preempted by ERISA" where Plaintiff asserted a violation of 24-A M.R.S.A. § 2436-A).  Thus, the Court finds that Count II is preempted by ERISA and dismissed as against Defendant CIGNA.

### 3. Common Law Causes of Action

Counts III through VI asserts claims based on common law causes of action, including: Count III. Breach of Contract: CIGNA breached its contract by failing to provide covered benefits; Count IV. Intentional Infliction of Emotional Distress: CIGNA, General Dynamics and Winship Green foreseeably, intentionally and/or recklessly caused severe emotional distress by discontinuing benefits; Count V. Negligent Infliction of Emotional Distress: the negligent discontinuation of benefits foreseeably caused severe emotional distress; and Count VI. Health Plan Negligence: CIGNA and General Dynamics were negligent in denying contractually guaranteed medical benefits in a dilatory fashion. The gravamen of each these claims is the improper denial of the claimed benefit, skilled nursing care. The viability of these claims is foreclosed by Supreme Court and First Circuit precedent and each is preempted by ERISA. See Davila, 542 U.S. at 212-13, 221; Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 7 (1st Cir. 1999); Turner v. Fallon Community Health Plan Inc., 127 F.3d 196, 198-99 (1st Cir. 1997).

In Count III, Plaintiff presses a claim of common law breach of contract. Specifically, the First Amended Complaint states: "CIGNA breached its contract of insurance with Bradley Gallagher by failing to provide covered benefits . . . ." (First Am. Compl. at 8.)[6] In addition, Count VI asserts a cause of action for "Health Plan Negligence:" "CIGNA and General Dynamics Corporation were negligent in denying contractually guaranteed medical benefits in such a dilatory fashion that Mr. Gallagher was injured, and died." (Id. at 11.) In response to the Motion to Dismiss, Plaintiff argues generally that "[s]tate law claims for breach of contract . . . and negligence regarding the health insurance contract are in no way related to or connected with

---

[6] Plaintiff also states that CIGNA breached its implied contractual duty to act in good faith and deal fairly with its insured. The Law Court has noted that the breach of the covenant of good faith and fair dealing is not a separate cause of action in the state of Maine. See Marquis v. Farm Family Mut. Ins. Co., 628 A.2d 644, 652 (Me. 1993).

the terms of the BIW/General Dynamics plan itself." (Pl.'s Resp. to Mot. of Def. CIGNA Healthcare of Maine, Inc. to Dismiss Counts I – VI and X of Pl.'s First Am. Compl. with Incorporated Mem. of Law ("Plaintiff's Response") (Docket # 13) at 5.)

Nonetheless, the heart of Plaintiff's claims in Counts III and VI is CIGNA's denial of benefits under the plan. Because the terms of Plaintiff's policy, an ERISA plan, governed his entitlement to benefits, it would be impossible to determine whether the decision by CIGNA to deny benefits constituted a breach of contract or negligence without consulting and applying the terms of the ERISA plan. Plaintiff's claims therefore not only "relate to" his claim for benefits under the policy, they are "inseparably connected" to that policy. See Zipperer v. Raytheon Co. Inc., 493 F.3d 50, 54 (1st Cir. 2007) (citing Carlo, 49 F.3d at 794, 795). As the First Circuit has stated: "It would be more difficult to think of a state law that 'relates' more closely to an employee benefit plan than one that affords remedies for the breach of obligations under that plan." Turner, 127 F.3d at 199.

Plaintiff's claims in Counts IV and V for emotional distress are also predicated on the denial of benefits. Indeed, for the intentional infliction of emotional distress claim, Plaintiff claims that the denial of benefits foreseeably caused severe emotional distress, while Plaintiff's claim for negligent infliction of emotional distress asserts that the negligent discontinuation of benefits caused severe emotional distress. As in Carrasquillo v. Pharmacia Corporation, where the Plaintiff's claim for intentional infliction of emotional distress was "simply a reiteration of the facts supporting" the preempted claims, here "because the emotional distress claim obviously piggybacks on the facts underlying the [breach of contract and negligence claims], which are preempted, the emotional distress claim[s], too [are] preempted." Carrasquillo v. Pharmacia Corp., 466 F.3d 13, 20 (1st Cir. 2006) (citing Danca, 185 F.3d at 7 n.9).

In addition, a primary purpose of the ERISA preemption provisions was the prevention of a multiplicity of state regulation and alternative enforcement mechanisms.  <u>New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.</u>, 514 U.S. 645, 657 (1995) ("The basic thrust of the pre-emption clause, then, was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans.").  The common law causes of action pressed by Plaintiff "create a threat of conflicting and inconsistent state and local regulation of the administration of ERISA plans."  <u>Danca</u>, 185 F.3d at 7.  Indeed, different states could apply different standards for breach of contract, negligence, intentional infliction of emotional distress and negligent infliction of emotional distress.  ERISA's preemption provisions were designed by Congress to prevent this possibility.  Plaintiff's common law claims, Counts III through VI, are preempted and dismissed as against Defendant CIGNA.

C.     **Breach of Fiduciary Duty under ERISA (Count X)**

In Count X, Plaintiff asserts a cause of action for breach of fiduciary duty against CIGNA, General Dynamics and Dr. Deshmukh.  Plaintiff invokes two separate sections of ERISA as the statutory basis for her complaint, section 409 and section 502(a)(3).  In their Motions to Dismiss, Defendants CIGNA and Dr. Deshmukh argue that Plaintiff cannot maintain a cause of action under section 409 because it provides a cause of action only with respect to remedies that protect the entire plan.  In response, Plaintiff states: "Plaintiff concedes that § 409 does not provide a remedy to individual Plan beneficiaries and therefore withdraws its claim under § 409."  (Pl.'s Resp. at 8.)  Thus, the Court will limit its consideration of breach of fiduciary duty to section 502(a)(3).

Section 502(a)(3) provides that a participant or beneficiary may bring a civil action "to enjoin any act or practice which violates any provision of this title or the terms of the plan or . . .

to obtain other appropriate equitable relief . . . to redress such violations or . . . to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3). Only appropriate equitable relief is permitted under section 502(a)(3). Id. The Supreme Court has held that "equitable relief" includes "those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993); see also Todisco v. Verizon Commc'ns, Inc., 497 F.3d 95, 99 (1st Cir. 2007) (noting that "appropriate equitable relief" excludes compensatory monetary damages, which is a classic form of legal relief). Further delimiting the bounds of section 502(a)(3), the Supreme Court has stated that this "'catchall' provision[] act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that section 502 does not elsewhere adequately remedy." Varity Corp. v. Howe, 516 U.S. 489, 512 (1996). "Following this guidance, federal courts have uniformly concluded that, if a plaintiff can pursue benefits under the plan pursuant to Section a(1), there is an adequate remedy under the plan which bars a further remedy under Section a(3)." Larocca v. Borden, Inc., 276 F.3d 22, 28 (1st Cir. 2002) (collecting cases).

Turning to Plaintiff's claim, Count X asserts a cause of action for breach of fiduciary duty in violation of section 502(a)(3). As with the other claims, the heart of Count X is the denial of benefits that Plaintiff asserts caused Mr. Gallagher's ultimate death. While the requested remedy in the First Amended Complaint is injunctive and equitable relief, Plaintiff's Response to the Motions to Dismiss belies the true nature of the Complaint: "[N]ow that Mr. Gallagher has died, he is no longer in need of future insurance coverage, but rather compensation for the loss of his life." (Pl.'s Resp. at 12.) Plaintiff here does not seek equitable relief, but compensatory damages, which are not available under section 502(a)(3). See Todisco, 497 F.3d

at 99-100; see also Turner, 127 F.3d at 200 (denying a claim for breach of fiduciary duty where Plaintiff sought "damages, not equitable relief, and his grievance – a denial of benefits – is specifically addressed by 29 U.S.C. § 1132(a)(1)(B)").

Further, the First Amended Complaint also contains a claim under section 502(a)(1)(B). Count VIII asserts a cause of action for wrongful denial of benefits under section 502(a)(1)(B) and (g)(1) of ERISA. The availability of relief under section 502(a)(1)(B) makes a suit under section 502(a)(3) inappropriate. As this Court has previously stated, "First Circuit caselaw is clear that equitable relief under section 1132(a)(3) is inappropriate when a party is entitled to pursue plan benefits or enforce plan rights under section 1132(a)(1)(B)." Kourinos v. Interstate Brands Corp., 324 F. Supp. 2d 105, 107 (D. Me. 2004). For these reasons, Count X is dismissed as against Defendants CIGNA and Dr. Deshmukh.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Defendants' Motions to Dismiss (Docket #s 9 & 21). Therefore, the Court **ORDERS** that Counts I through VI and Count X of Plaintiff's First Amended Complaint be and hereby are **DISMISSED** with prejudice as against Defendants CIGNA and Dr. Deshmukh.

**SO ORDERED.**

/s/ George Z. Singal

Chief United States District Judge

Dated this 14th day of March, 2008.